UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TREVOR BURNS 97-A-6087,

          Plaintiff,

   - against-

C.O. MARTINEZ, et al.,

          Defendants.

Docket Number
08-CV-4835 (LAK)(JCF)

**DECLARATION OF
INNA REZNIK**

Electronically filed

     INNA REZNIK, an attorney duly admitted to practice law in the courts of the State of

New York and in this Court, certifies, pursuant to 28 U.S.C. § 1746 and under penalty of perjury

that the following is true and correct:

     1.     I am an Assistant Attorney General in the office of Andrew M. Cuomo, Attorney

General of the State of New York. I submit this affirmation in opposition to Plaintiff's Motion to

Compel.

     2.     I am fully familiar with the facts set forth and the documents referred to herein

based on my personal knowledge of this action and my review of records maintained in the

Office of the Attorney General and on file in the Clerk's Office of the United States District

Court for the Southern District of New York.

     3.     Plaintiff asserts that the defendant New York State Department of Correctional

Services ("DOCS") corrections officers used excessive force on him on April 26, 2007 while

plaintiff was incarcerated at Downstate Correctional Facility.

     4.     Document discovery by defendants is substantially complete.

     5.     Plaintiff's counsel, on the other hand, has not produced a single document in

response to defendants' discovery demands, instead objecting to every document request served

on plaintiff.  See Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories and Requests to Produce annexed as Exhibit A.

      6.     As set forth below, the parties had multiple lengthy discussions regarding document discovery and the confidentiality stipulation in July and August, 2009 in an attempt to resolve differences.  Rather than continue these discussions, plaintiff instead filed this motion to compel on the day that I was starting a trial.

      7.     When plaintiff filed this excessive force claim, DOCS initiated a search for all relevant internal paperwork normally generated when there has been an alleged use for force, i.e., an Unusual Incident Report, Use of Force Report, Use of Force Exam, Misbehavior Report, etc. No such documents were found to have been created or to exist for an April 26, 2007 incident involving the plaintiff at Downstate.  It is therefore defendants' position that the incident plaintiff complains of did not happen.  Defendants have notified plaintiff that these documents do not exist.

      8.     Aside from the nonexistence of any documents that would arguably substantiate plaintiff's claim of a use of force, or even of an unusual incident involving plaintiff on the date in question, defendants have produced plaintiff's grievance regarding the alleged incident, plaintiff's complete medical records (which do not indicate any injury from a use of force), and staff planning grids and facility log book entries for the date and alleged location of the incident.

      9.     With respect to other documents requested by plaintiff, such as floor plans of Downstate Correctional Facility, relevant portion of defendants' personnel files, and Uses of Force and False Statement information against the defendants, defendants have not yet produced those documents because they are confidential and the parties have been negotiating the terms of

2

a confidentiality order prior to production of those documents. In fact, it has been plaintiff's delay in reviewing the proposed confidentiality stipulation and their insistence on unacceptable language in the stipulation that have caused the delay in the production of these documents.

10.     The current discovery dispute concerning confidential documents should not prevent the scheduling of at least the plaintiff's deposition, since the confidential documents, other than the floor plans, pertain to the defendants, and since defendants do not require any additional documents to conduct plaintiff's deposition. I have asked plaintiff's counsel whether they would be willing to schedule plaintiff's deposition, but they are unwilling to do so prior to completion of document discovery.

11.     Since the beginning of this litigation, defendants have been willing to work amicably with both the plaintiff, while proceeding pro se, and with plaintiff's counsel, when they entered the case, on discovery issues.

12.     When plaintiff was proceeding pro se and requested assistance in identifying the John Doe defendants in his initial complaint, on August 28, 2008, defendants provided plaintiff a copy of the grievance and other documents in order to assist him in identifying the other defendants.

13.     On September 11, 2008, defendants also timely provided responses to plaintiff's Local Rule 33.2 discovery requests. Plaintiff did not raise any issues or objections to the adequacy of defendants' discovery responses; nor did he seek supplemental discovery until March, 2009.

14.     On March 3, 2009, the Court ordered defendants to produce documents concerning defendants' other uses of force and making false statements. About that time,

3

plaintiff's counsel entered the case, and filed a formal Notice of Appearance on March 26, 2009.

15.     After plaintiff's counsel filed their Notice of Appearance, they telephoned me and requested courtesy copies of the answers filed in the case because they had not received them from their client, and stated that they were "getting up to speed" on the case. Some time after I forwarded defendants' answers, I received another telephone call from plaintiff's counsel to request courtesy copies of all discovery demands and responses and all correspondence exchanged in the case to make sure their file was complete, and that they were still getting up to speed on the case.

16.     Based on my conversations with plaintiff's counsel, it was my understanding that because Mr. Burns did not give them all the pertinent documents in the case and because of their apparent difficulty in communicating with their client, counsel requested the documents from defendants and were still evaluating the case upon receipt of all the documents. During conversations, plaintiff's counsel did not address how they wished to proceed with the case and whether or not they would even elect to proceed with the case once they completed their review, given that there was no Use of Force Report, no Unusual Incident Report, no Misbehavior Report, and no Inspector General's investigation, and given that plaintiff's medical records indicate that he had no injury from the alleged incident.

17.     After reviewing their file for several months, plaintiff's counsel next contacted me in June, 2009 about discovery issues, and we met and conferred at that time. I also asked plaintiff's counsel to confirm with Mr. Burns whether, given the lack any documentation of plaintiff's claims, plaintiff wished to discontinue the action with prejudice at that time. Although counsel did not represent that they discussed this with Mr. Burns, they indicated that they would

4

not discontinue the action. See June 29, 2009 letter annexed as Exhibit B.

18.     Thereafter, in June, 2009, both parties served additional discovery demands.  Both parties also agreed that a confidentiality stipulation was necessary prior to production of certain documents, and agreed to extend discovery to July 31, 2009.

19.     On July 2, 2009, I forwarded plaintiff's counsel a draft confidentiality stipulation for their review. See Defendants' First Draft of Confidentiality Stipulation annexed as Exhibit C. The draft forwarded to counsel contained the standard language used by this Office and DOCS in similar actions. While our new discovery cutoff date was now July 31, 2009, plaintiff's counsel did not contact me about the confidentiality stipulation until over 3 weeks later, when on July 28, 2009, plaintiff's counsel requested to meet and confer regarding the draft of the confidentiality stipulation. See July 28, 2009 email annexed as Exhibit D.

20.     On July 29, 2009, we met and conferred regarding the stipulation, as well as about the parties' respective discovery responses, for over one and a half hours.  On August 3, 2009, plaintiff's counsel forwarded a revised confidentiality stipulation that contained numerous substantial changes to the stipulation. That day, I informed counsel that I needed some time to review their extensive changes to the stipulation. See August 3, 2009 emails and Plaintiff's Draft Confidentiality Stipulation annexed as Exhibit E.

21.     On August 6, 2009, we again met and conferred, for about an hour and a half, regarding both versions of the confidentiality stipulation.  At that time, we went through the entire language of the stipulation and I informed counsel that I did not believe that DOCS would agree to produce documents under plaintiff's version of the stipulation, and because many of the plaintiff's term were unacceptable, I would endeavor to incorporate some of the changes they

5

requested into defendants' version of the stipulation, and would not be revising plaintiff's version. Plaintiff's counsel was subsequently on vacation, and on August 17, 2009, I advised counsel that I incorporated some of their changes to the stipulation, but that it would have to be reviewed internally in my office and by DOCS. See August 17, 2009 emails annexed as Exhibit F.

22.     Plaintiff's motion attaches their version of the stipulation, but not defendants' version, as an Exhibit.

23.     During our initial and subsequent discussions concerning the stipulation, I advised plaintiff's counsel that it appeared, based on the Amended Complaint, that plaintiff was making a claim for psychological injuries and emotional damages. I asked counsel to verify that plaintiff was still making that claim, and if he was, to provide defendants with release for plaintiff's psychiatric records. To date, plaintiff's counsel has not advised whether or not the claim for psychological damages and emotional injuries is in the case, and whether or not they will provide a release of plaintiff's mental health records.

24.     On August 27, 2009, I forwarded a revised confidentiality stipulation to plaintiffs' counsel. Despite having previously informed plaintiff's counsel that defendants and DOCS could not agree to many of the changes they requested, on August 31, 2009, plaintiff's counsel advised me that they were disappointed that the stipulation did not incorporate all their requested changes, and requested another meet and confer. See August 27, 2009 and August 31, 2009 emails and Defendants' revised Confidentiality Stipulation annexed as Exhibit G.

25.     Plaintiff's concerns with the confidentiality stipulation was that it allegedly refused to: (1) classify information in the public domain as non-confidential; (2) give plaintiff

6

reasonable access to documents necessary to his defense, such as floor plans of the areas where the incident occurred that are visible to the public or prisoners; (3) grant plaintiff the ability to designate as confidential documents produced by DOCS that concern his personal information; (4) strike the reference to Fed. R. Civ. P. 26; and (5) remove the requirement that plaintiff's counsel destroy their own work product. See August 31, 2009 email from plaintiff's counsel, Exhibit G.

26. On August 31, 2009, I advised counsel that I was actively engaged in trial preparation for a trial to commence in the Southern District on September 21, 2009, and that I would advise them of my availability to meet and confer. See August 31, 2009 email annexed as Exhibit H. We met and conferred about the stipulation again on September 2, 2009. At that time, there were several issues that both parties could not agree on, and it was necessary to consult DOCS' Counsel's Office regarding some of the language of the stipulation.

27. Contrary to plaintiff's counsel's assertion in their Memorandum of Law, neither DOCS nor defense counsel agreed to provide a revised draft of the confidentiality stipulation by September 10, 2009, especially given that that date was just after a long Labor Day weekend.

28. On September 11, 2009, after plaintiff's counsel contacted me about the status of stipulation, I advised counsel that I would follow up with DOCS' Counsel's Office. See September 11, 2009 email annexed as Exhibit I. By that time, as I had previously advised plaintiff's counsel, I had been actively engaged in trial preparation in Rossi v. Stevens, 04-CV-1836 (CS) and was out of the office a majority of the time for witness and case preparation. After receiving additional emails from plaintiff's counsel, I referred them to my colleague, Assistant Attorney General John Knudsen.

7

29.     Currently, defendants have agreed to three of the five changes requested by
plaintiff to the confidentiality stipulation. Defendants have agreed to allow plaintiff to review
confidential floor plans of the area of Downstate in question in the presence of his counsel, have
agreed to remove the reference to Fed. R. Civ. P. 26, and have agreed to remove the requirement
that plaintiff's counsel destroy its own work product, which according to them, is physically
impossible to do. However, defendants cannot agree to the other changes requested by plaintiff,
i.e., the classification of information in the public domain as non-confidential, and allowing
plaintiff to designate as confidential certain of his records, such as his medical records. The ball
is in plaintiff's court with respect to those changes.

30.     Rather than continue to work together on the confidentiality stipulation or take a
reasonable step given my trial, such as a request for an extension of the fact discovery schedule,
plaintiff's counsel chose to file this motion to compel on the day that my trial started, when I
would not be able to work on either the stipulation or the motion.

Dated: New York, New York
       October 9, 2009

                                                    _____
                                                    INNA REZNIK

8